UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO TRUST CO., N.A., as Owner Trustee,<br><br>   *Plaintiff*,<br><br>v.<br><br>FAST COLOMBIA S.A.S., *d/b/a* VIVACOLOMBIA,<br><br>   *Defendant*. | Case No.: 1:20-cv-7984<br><br>**COMPLAINT** |

## COMPLAINT

Plaintiff, Wells Fargo Trust Company, National Association (f/k/a Wells Fargo Bank Northwest, National Association), not in its individual capacity but solely in its capacity as Owner Trustee ("Lessor"), by and through undersigned counsel, sues Defendant, Fast Colombia S.A.S. (d/b/a VivaColombia) ("VivaColombia") and alleges as follows:

1. This is an action for breach of contract to recover damages against VivaColombia based on its breaches of that lease.

## PARTIES

2. Wells Fargo Trust Company, National Association is a national banking association with its main office located at 299 South Main Street, 12th Floor, Salt Lake City, Utah 84111. Wells Fargo Trust Company, National Association brings this action not in its individual capacity, but solely in its capacity as Owner Trustee of the Aircraft MSN 1370 Trust, a Utah common law trust (the "Owner Trust") governed by the terms of that certain Third Amended and Restated Trust Agreement (MSN 1370) dated as of June 30, 2017, between SASOF III (A26) Aviation Ireland

DAC ("SASOF"), as trustor, and Wells Fargo Trust Company, National Association, in its individual capacity and as trustee thereunder.

3. VivaColombia is a Colombian corporation with its principal place of business located in Rionegro, Antioquia, Colombia. VivaColombia is an international airline in the business of leasing aircraft for use in flying passengers within Colombia and to other countries.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5. This Court has personal jurisdiction over VivaColombia because VivaColombia consented to personal jurisdiction in the Southern District of New York with respect to the aircraft lease at issue in this matter.

6. Venue in this Court is proper under 28 U.S.C. § 1391, as the parties are subject to personal jurisdiction in this District and have contractually agreed to venue of this action in this Court.

## GENERAL ALLEGATIONS

**The Lease**

7. On December 26, 2014, Lessor and VivaColombia entered into the Aircraft Lease Agreement (MSN 1370) (the "Aircraft Lease Agreement"), an agreement for VivaColombia to lease from Lessor one Airbus A320-200 with serial number 1370 (the "Aircraft"). A true and correct copy of the Aircraft Lease Agreement is attached as **Exhibit 1**.

8. On December 26, 2014, VivaColombia signed and agreed to the Aircraft Lease Shared Terms (the "Lease Shared Terms"), a document which was incorporated into the Aircraft Lease Agreement. A true and correct copy of the Lease Shared Terms is attached as **Exhibit 2**.

Together, the Aircraft Lease Agreement, the Lease Shared Terms, the Certificate of Acceptance referenced in paragraph 11 below, the First Amendment referenced in paragraph 22 below and the Second Amendment referenced in paragraph 24 below form the "Lease."

9. Under the terms of the Aircraft Lease Agreement, the "Participant" is the entity that holds the beneficial interest in the Owner Trust. Currently, SASOF is the Participant.

10. Under the Lease, VivaColombia agreed to lease the Aircraft from Lessor beginning on the "Delivery Date" and ending with the expiration of the Lease on March 31, 2021 (the "Expiry Date").

11. VivaColombia irrevocably accepted the Aircraft on February 15, 2015 (the "Delivery Date"), and the Certificate of Acceptance evidencing such acceptance under the Lease was executed by VivaColombia on or about February 15, 2015. A true and correct copy of the Acceptance Certificate is attached as **Exhibit 3**.

12. Under section 3 of the Lease Shared Terms and section 1.1 of the Aircraft Lease Agreement, VivaColombia is required to pay Lessor monthly rent ("Rent-Periodic") on the first day of each calendar month in the amount of (i) $147,000 for each month of the lease term from June 1, 2015, until March 31, 2019 (inclusive) and (ii) $130,000 for each month of the lease term from April 1, 2019, onward (except that no Rent-Periodic is due for the period from February 1, 2021 to March 31, 2021).

13. Under section 15 of the Lease Shared Terms, VivaColombia agreed that its "obligation to pay Rent is and will be absolute and unconditional and will not be abated, suspended, diminished, reduced, delayed, discontinued, terminated or otherwise affected by any condition, circumstance, act or event of any kind whatsoever."

14.     Under section 3.3.3 of the Lease Shared Terms, VivaColombia agreed to pay interest to Lessor on any rent not paid when due. VivaColombia agreed to pay this interest for any period for which that rent remained unpaid at the Past Due Rate, as defined in the Lease.

15.     The Past Due Rate as defined in the Lease is a rate per annum equal to 500 basis points above the Prime Rate quoted by Citibank in New York.

16.     Under section 3.3 of the Aircraft Lease Agreement and section 2.2.1 of the Lease Shared Terms, VivaColombia also agreed to pay certain "Maintenance Amounts" for various components of the Aircraft on the 15th day of each calendar month following the Delivery Date. The Lease defines Maintenance Amounts as a fixed amount per month (in the case of the Maintenance Amount – Airframe and the Maintenance Amount – Landing Gear) or a specified amount per unit of utilization, such as engine flight hour (in the case of Maintenance Amount – Engine Overhaul), engine cycle (in the case of Maintenance Amount – Engine LLP), or APU hour (in the case of Maintenance Amount – APU).

17.     Under section 12 of the Lease Shared Terms, failure to make any periodic or scheduled payment for three business days after the date on which such payment is due, including any payment of Rent-Periodic or Maintenance Amounts, is an Event of Default and constitutes a repudiatory breach of the Lease.

18.     Under section 6.2.1(5) of the Lease Shared Terms, VivaColombia is required to furnish to Lessor information regarding the location, condition, use and operation of the Aircraft, as Lessor may from time to time reasonably request.

19.     Under section 12.2(6) of the Lease Shared Terms, any failure by VivaColombia to comply with, observe or perform any of its covenants, agreements or obligations under any Operative Document, including the Lease, constitutes an Event of Default if such failure continues

for 20 days after the earlier of (a) VivaColombia becoming aware of such failure and (b) written notice of such failure to VivaColombia from Lessor.  If such failure by its nature cannot be cured within 20 days, VivaColombia will have the reasonable number of days necessary to cure such failure (not to exceed 40 days) so long as it uses diligent and best efforts to do so.

20. Under section 13.1.4 of the Lease Shared Terms, VivaColombia agreed that Lessor has the right to recover from VivaColombia all Expenses incurred, directly or indirectly, by Lessor in connection with an Event of Default.

21. The Lease defines Expenses as including "any and all reasonable legal fees and expenses and the reasonable fees and expenses of other professional advisers and investigators." Accordingly, Lessor has the right to recover attorneys' fees expended as a result of any Event of Default.

**VivaColombia Seeks Accommodations from Lessor, and Lessor Provides Assistance**

22. On June 30, 2017, SASOF acquired the beneficial interest in the Owner Trust from the prior beneficial owner.  In connection with that acquisition, Lessor and VivaColombia executed the Lease Amendment Agreement dated June 30, 2017 ("First Amendment"), which redefined the Participant in the Lease as SASOF and redefined the Servicer of the Lease as Apollo Aviation Management Limited, an entity now named Carlyle Aviation Management Limited.  A true and correct copy of the First Amendment is attached as **Exhibit 4**.

23. Following SASOF's acquisition of the Owner Trust, VivaColombia struggled to meet its obligations under the Lease.  For instance, VivaColombia failed to make payments of Rent-Periodic on December 15, 2017, January 15, 2018, February 15, 2018, and March 15, 2018.

24. In early 2018, as a result of financial difficulties it was facing, VivaColombia requested that Lessor restructure some of VivaColombia's payment obligations under the Lease.

To assist VivaColombia in navigating these financial difficulties, Lessor agreed in April of 2018 to, *inter alia*, temporarily suspend VivaColombia's responsibility to pay Maintenance Amounts for approximately one year. This agreement was formalized in the Lease Amendment Agreement No. 2 ("Second Amendment") between Lessor and VivaColombia on April 13, 2018. A true and correct copy of the Second Amendment is attached as **Exhibit 5**.

25. The Second Amendment allowed VivaColombia to preserve approximately $1,800,000 in cash flow by deferring its obligations to pay maintenance reserves. Lessor executed the Second Amendment with the expectation that the help it provided to VivaColombia would allow VivaColombia to return to meeting its contractual obligations.

26. After the Second Amendment, Lessor continued to accommodate more of VivaColombia's requests in respect of the Aircraft. For example, on or around March 2019, VivaColombia requested Lessor's assistance in connection with the subleasing of the Aircraft to Avion Express, a Lithuanian airline. Lessor cooperated with VivaColombia's request and provided assistance in securing and executing the sublease.

27. As the expiry date of the sublease to Avion Express was approaching, and contrary to the express terms of the Lease, VivaColombia informed Lessor in September 2019 that VivaColombia did not wish to continue leasing the Aircraft and asked Lessor to accept early redelivery of the Aircraft and terminate the Lease. Lessor denied this request.

**VivaColombia Fails to Inspect and Repair the Aircraft Engines**

28. VivaColombia retook possession of the Aircraft from Avion Express upon the expiry of the sublease on or around December 2019. By that time, the Aircraft Engines had approximately 10,000 flight cycles of use, an amount likely to require maintenance repairs for which VivaColombia would be responsible under the terms of the Lease.

29. In accordance with standard industry practice, after retaking possession of an engine with significant use, VivaColombia should have conducted a borescope examination of each of the major engine modules to determine what maintenance and repair was required.

30. On January 28, 2020, Lessor requested a borescope inspection report and engine condition monitoring data with respect to the Aircraft Engines to determine the maintenance status of the Engines. Despite VivaColombia's obligation under section 6.2.1(5) of the Lease Shared Terms to furnish information regarding the condition of the Aircraft upon Lessor's request, on or about February 3, 2020 VivaColombia delivered a summary from a borescope inspection, which indicated no borescope inspection was performed in respect of the LPT module, one of the major modules of the Engines. Contrary to Lessor's request, VivaColombia also failed to provide a full borescope inspection report and instead provided just a summary in an excel file.

31. Pursuant to Section 1.1.1 of Schedule 2 to the Lease Shared Terms, VivaColombia is required "at its own expense . . . at all times during the Lease Term and until the Aircraft is returned . . . , maintain, service, repair, test, inspect and overhaul (as required) the Aircraft . . . in accordance with…(1) Lessee's Maintenance Program (without waiver) . . . and any other relevant manufacturer requirements; (2) The rules and regulations of the Aviation Authority; and (3) Lessee's general maintenance practices and without discrimination against the Aircraft compared to other similar aircraft operated by Lessee." Also, pursuant to Section 1.1.2 of Schedule 2 to the Lease Shared Terms, VivaColombia is required to "procure that all repairs to the Aircraft will be . . . effected *promptly* . . . " (emphasis added).

32. Upon information and belief, VivaColombia intentionally failed to perform a borescope inspection in respect of the LPT module in order to avoid detecting damage to the Engines that VivaColombia would then be required to repair under the terms of the Lease.

33. Upon information and belief, VivaColombia's strategy was to reduce or avoid altogether the expense of these repairs by either (1) returning the Aircraft early to Lessor and terminating the Lease; or (2) delaying the discovery of such damage until the end of the Lease term. VivaColombia knew or should have known that under standard industry practices, Lessor would be remarketing the Aircraft and making arrangements to deliver it to an onward lessee or purchaser upon termination or expiration of the Lease.

34. Upon information and belief, it was VivaColombia's intention to use the "time pressure" that Lessor would face in delivering the Aircraft to a new lessee in order for VivaColombia to negotiate a return of the Aircraft from VivaColombia in a non-compliant maintenance condition or to force Lessor to accept a discount on the corresponding end-of-lease compensation that VivaColombia would have otherwise been required to pay under the Lease.

35. On July 7, 2020, VivaColombia finally provided the results of a full borescope inspection performed on May 27, 2020. As Lessor suspected, the borescope inspection report revealed damage to the engine's LPT modules that will require VivaColombia to repair it under the terms of the Lease.

36. Under section 12.2(6) of the Lease Shared Terms, any failure by VivaColombia to comply with, observe or perform any of its covenants, agreements or obligations under any Operative Document, including the Lease, constitutes an Event of Default if such failure continues for 20 days after the earlier of (a) VivaColombia becoming aware of such failure and (b) written notice of such failure to VivaColombia from Lessor. If such failure by its nature cannot be cured within 20 days, VivaColombia will have the reasonable number of days necessary to cure such failure (not to exceed 40 days) so long as it uses diligent and best efforts to do so.

**VivaColombia Stops Paying Rent-Periodic and Maintenance Amounts**

37. Following VivaColombia's refusal to provide a comprehensive borescope inspection report, and despite the numerous concessions and assistance provided by Lessor during 2018 and 2019, VivaColombia ceased making payments of Rent-Periodic and certain Maintenance Amounts as required under the Lease.

38. On April 1, 2020, VivaColombia failed to make a portion of the Rent-Periodic payment in the amount of $47,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

39. On May 1, 2020, VivaColombia failed to make the Rent-Periodic payment in the amount of $147,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

40. On June 1, 2020, VivaColombia failed to make the Rent-Periodic payment in the amount of $147,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

41. On July 1, 2020, VivaColombia failed to make the Rent-Periodic payment in the amount of $147,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

42. On August 1, 2020, VivaColombia failed to make the Rent-Periodic payment in the amount of $147,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

43. On September 1, 2020, VivaColombia failed to make the Rent-Periodic payment in the amount of $147,000 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

44. Through and including July 1, 2020, VivaColombia has failed and refused to make payments of Rent-Periodic in an amount not less than $782,000 (the "Unpaid Rent-Periodic Amount").

45. On March 15, 2020, VivaColombia failed to make a Maintenance Amount payment in the amount of $21,879.89 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

46. On April 15, 2020, VivaColombia failed to make a Maintenance Amount payment in the amount of $21,916.09 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

47. On May 15, 2020, VivaColombia failed to make a Maintenance Amount payment in the amount of $21,805.69 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

48. On June 15, 2020, VivaColombia failed to make the Maintenance Amount payment in the amount of $21,731.49 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

49. On July 15, 2020, VivaColombia failed to make the Maintenance Amount payment in the amount of $21,731.49 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

50. On August 15, 2020, VivaColombia failed to make the Maintenance Amount payment in the amount of $22,383.44 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

51. On September 15, 2020, VivaColombia failed to make the Maintenance Amount payment in the amount of $22,383.44 due to Lessor and has refused to make such payment since, thereby causing an Event of Default under the Lease.

52. Through and including September 25, 2020, VivaColombia has failed and refused to make payments of Maintenance Amounts in an amount not less than $153,831.53 (the "Unpaid Maintenance Amount").

53. Under section 3.3.3 of the Lease Shared Terms, VivaColombia agreed to pay interest to Lessor on any rent (including the Unpaid Rent-Periodic Amount and the Unpaid Maintenance Amount) not paid when due at a rate per annum equal to 500 basis points above the Prime Rate quoted by Citibank in New York.

54. Through the present date, interest has accrued on the Unpaid Rent-Periodic Amount and the Unpaid Maintenance Amount at the Past Due Rate in an amount no less than $14,981.81.

55. In communications with Lessor, VivaColombia has admitted and acknowledged that it is currently in arrears on both Rent-Periodic and Maintenance Amounts.

56. Under section 12.1 of the Lease Shared Terms, failure to make any periodic or scheduled rent payment is an Event of Default if such failure continues for three business days after the date on which payment is due.

57. Notwithstanding VivaColombia's unconditional obligation to make all rent payments in a timely manner, VivaColombia has refused to make certain rent payments due under the Lease and has caused an Event of Default as a result.

58. Notwithstanding VivaColombia's unconditional obligation to furnish to Lessor information regarding the location, condition, use and operation of the Aircraft, as Lessor may

from time to time reasonably request, VivaColombia has refused to furnish such information upon request and has caused an Event of Default as a result.

59. Under section 13.1.4 of the Lease Shared Terms, when an Event of Default occurs and is continuing, Lessor has the right to demand from VivaColombia all damages suffered, directly or indirectly, by Lessor in connection with such Event of Default, including all unpaid rent and all Expenses, such as attorneys' fees, incurred in connection with such Event of Default.

60. Lessor has abided by the obligations imposed on it in the Lease and continues to do so.

**Lessor Issues Notices of Default to VivaColombia**

61. On or about April 24, 2020, Lessor sent VivaColombia a Notice of Default and Demand for Immediate Performance pursuant to the Lease and demanded immediate payment of past due rent and interest owing under the Lease. A true and correct copy of the April 24, 2020, Notice of Default and Demand for Immediate Performance is attached as **Exhibit 6**.

62. On April 30, 2020, VivaColombia offered to pay Lessor $50,000 in partial satisfaction of outstanding rent by May 4, 2020, and a further $97,000 partial payment within the following two weeks.

63. VivaColombia made a partial payment of $50,000 to Lessor on May 4, 2020. VivaColombia made a second payment of $50,000 to Lessor on May 19, 2020, leaving $47,000 of its April 30 commitment outstanding.

64. VivaColombia never paid the remaining $47,000 of its April 30, 2020, commitment and thus never completed the partial payments it promised to make on that date.

65. On or about May 25, 2020, Lessor sent VivaColombia a Second Notice of Default and Demand for Immediate Performance and demanded immediate payment of past due rent and

interest owing under the Lease. A true and correct copy of the May 25, 2020, Second Notice of Default and Demand for Immediate Performance is attached as **Exhibit 7**.

66. To date, VivaColombia has failed to pay the outstanding amounts due under the Lease and, accordingly, remains in default.

67. Lessor has retained undersigned counsel to prosecute this action on its behalf and is obligated to pay its attorney's fees and costs.

68. All conditions precedent to Lessor's recovery have occurred, have been performed, or have been waived.

69. Lessor files this suit without waiving any of its rights under the Aircraft Lease Agreement or Lease Shared Terms, including its right to terminate those agreements based on any Event of Default.

## COUNT I
### (Breach of Contract)

70. Lessor repeats and re-alleges the allegations contained in paragraphs 1-69 as if fully set forth herein.

71. The Lease is a valid, binding, and enforceable contractual agreement between Lessor and VivaColombia and is governed by New York law.

72. Lessor has fully performed all of its obligations under the terms of the Lease.

73. To the extent that any obligations were not performed by Lessor, such obligations were excused by VivaColombia's breach of the Lease.

74. As set forth above, agreed to furnish information to Lessor regarding the condition of the Aircraft upon reasonable request by Lessor.

13

75. Despite its obligation and the written demands of Lessor, VivaColombia refused to provide basic information regarding the condition of the Aircraft, including the data from a standard borescope inspection of the Aircraft Engines, as reasonably requested by Lessor.

76. VivaColombia's failure to furnish information to Lessor regarding the condition of the Aircraft upon reasonable request by Lessor is an Event of Default and a breach of the Lease.

77. As set forth above, VivaColombia agreed to pay Rent-Periodic and Maintenance Amounts pursuant to the terms of the Lease.

78. Despite Lessor's patience and willingness to work with VivaColombia since 2018, VivaColombia has repeatedly failed to make payments when due.

79. VivaColombia's failure to make such payments when due constitutes an Event of Default and a breach of the Lease.

80. As a direct and proximate result of VivaColombia's breaches of the Lease, Lessor has suffered, and will continue to suffer, damages in an amount to be determined at trial, but not less than $950,811.34, plus additional interest, costs, and attorneys' fees.

81. Based on VivaColombia's Events of Default, Lessor has the right to terminate the Lease and demand immediate return of the Aircraft in return condition.  Lessor is also entitled to further damages following termination, including damages that are incapable of mitigation, such as deferred maintenance reserves in the amount of $1,832,459.59.

WHEREFORE, Plaintiff, Lessor, respectfully demands judgment against Defendant VivaColombia for damages in an amount no less than $2,783,271.13, as well as money damages resulting from termination of the lease, pre-judgment interest, taxable costs, attorneys' fees pursuant to Section 13.1.4 of the Lease sued upon, and for any other relief that this Court deems just and proper.  Plaintiff further demands immediate return of the Aircraft in return condition.

**PRAYER FOR RELIEF**

WHEREFORE, Lessor respectfully requests that the Court:

(1)   award Lessor all actual, economic, consequential, lost-profits, and out-of-pocket damages sustained as a result of the VivaColombia's breaches of the Lease, including, without limitation, unpaid rent, plus interest, in an amount to be determined at trial;

(2)   award Lessor pre- and post-judgment interest as allowed by law;

(3)   award Lessor reasonable attorneys' fees and costs, as well as other expenses expended in connection with the Events of Default and any termination of the Lease, as provided in the Lease;

(4)   order Defendant to return the Aircraft to Lessor in return condition, as provided in the Lease;

(5)   grant Lessor such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action.

Dated:   September 25, 2020
         New York, New York           WHITE & CASE LLP

                           By:   *s/ Gregory M. Starner*
                                 Gregory M. Starner
                                 Evelyn A. Fanneron
                                 1221 Avenue of the Americas
                                 New York, NY 10020
                                 Telephone: 212-819-8200
                                 gstarner@whitecase.com
                                 evelyn.fanneron@whitecase.com

                                 *Attorneys for Plaintiff, Wells Fargo Trust Co. N.A., as Owner Trustee of the Aircraft MSN 1370 Trust.*